# William C. Harbison et al., Plffs. in Err., *v.* Silas M. Baily to Use of the Commonwealth.

In an action against the sureties on a bond to the state treasurer for the safe keeping and return of money of the commonwealth deposited by him with the principal, it is no defense that the deposit was unauthorized by law.

(Decided November 1, 1886.)

Argued October 12, 1886, before GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. October Term, 1886, No. 54, W. D. Error to the Common Pleas of Lawrence County to review a judgment on a verdict for the plaintiff in an action for debt. Affirmed.

At the trial before WICKHAM, J., it appeared that Silas M. Baily, in whose name this action was brought for the use of the commonwealth, became state treasurer of Pennsylvania in May, 1882. Soon after Mr. Baily's election Daniel H. Wallace, who was engaged in banking at New Castle, Pennsylvania, in the name of "The People's Savings Bank," requested him to deposit money of the commonwealth in his bank. No agreement was made between them, but after Mr. Baily entered upon his office he received from Mr. Wallace a bond to him as state treasurer, dated May 15, 1882, in the sum of $40,000, conditioned substantially that Mr. Wallace would faithfully and honestly keep, account for, and pay over on demand of Mr. Baily or his successor all money of the commonwealth which should be deposited with him.

Subsequently, without any arrangement, agreement, or understanding of any kind, other than that which the law implies from an ordinary deposit in bank, Mr. Baily deposited in this bank $10,000, of which he afterwards drew out $5,000; and still later he made two other deposits of $3,000 and $2,000, respectively, leaving a balance of $10,000, which was there at the suspension of the bank in the summer of 1884.

William Livsey succeeded Mr. Baily in the office of state treasurer on the first Monday of May, 1884.

During all this time the state treasurer made the regular monthly statements of account, under oath, to the auditor-general, as required by law, giving in detail the different sums which went to make up the amount in the state treasury, including the names of banks, corporations, firms and individuals with whom the money was deposited, with the amount of each, and the securities held by the state for the safe keeping of the same, and that no interest or other consideration was received on such deposits.

In these statements this deposit was regularly included.

The bank also rendered to the auditor-general, under oath, the statements of account of the money deposited, corresponding to that of the state treasurer, as required by act of February 12, 1876, § 2.

When Mr. Livsey heard of the bank's embarrassment he demanded payment of the deposit, and that being refused he brought suit upon the bond against D. H. Wallace, who made no defense, and judgment was promptly recovered against him. He

brought this suit at the same time against the defendants who were the sureties on the bond, and they set up as a defense that the money deposited was part of the sinking fund; that under the statutes the deposit was contrary to law; and that the bond was therefore void.

The charge and the answers of the court to the defendants' points were to the effect that if the jury found the facts as stated their verdict should be for the plaintiff. Verdict for the plaintiff for $10,822.87, and judgment accordingly. Thereupon the defendants took this writ, and assigned as error the charge and answers of the court.

*R. B. McComb* and *George E. Treadwell,* for plaintiffs in error.—All contracts to indemnify officers against prospective nonfeasance, malfeasance, or misfeasance of their official duties, are void.    Story, Contr. § 572; Smith, Lead. Cas. 631.

If a contract unduly interferes with governmental functions, or with the relations of the citizen towards his own government in any of its departments, whether the interference be direct or indirect, such agreement is illegal, whatever form it may have assumed.    2 Pom. Eq. Jur. § 935.

A contract prohibited by statute, or for the performance of any act forbidden by law, or tending to defeat the general purposes of any statute, is void and cannot be the foundation of any action at law.    Note to Gulick v. Ward, 18 Am. Dec. 403.

The sinking fund was established by the act of April 22, 1858 (P. L. 468).    Section 2 of said act created the commissioners of the sinking fund, whose duty it was "to receive the foregoing incomes and revenues and apply the same, first, to the payment of the accruing interest of the public debt, and second, to the principal thereof, and not otherwise."    Section 6 of the same act expressly provided that "at no time or in no manner shall any portion of the fund hereby created be otherwise applied except as herein provided, under a penalty of $1,000."

Section 3 of the act of 1870 (P. L. 67) requires the state treasurer "on the last business day of each month" to cause balances to be struck, showing balance due to the commissioners of the sinking fund, and make and deliver to the commissioners a certificate, etc.    Section 4 of said act makes it the duty of the commissioners of the sinking fund, upon receiving said certificate, "forthwith to use the money shown to be due to them there-

by, in purchasing the interest-bearing indebtedness of the state," etc.

The whole transaction by which Daniel H. Wallace procured the money shows a disregard of the law—a violation of a public trust and of official duty. Mitchell v. Smith, 1 Binn. 110, 2 Am. Dec. 417; Filson v. Himes, 5 Pa. 452, 47 Am. Dec. 422; Fowler v. Scully, 72 Pa. 456, 13 Am. Rep. 699; Trist v. Child, 21 Wall. 441, 22 L. ed. 623; Columbia Bank & Bridge Co. v. Haldeman, 7 Watts & S. 234, 42 Am. Dec. 229.

*D. B. & E. T. Kurtz,* for defendant in error.—All the later statutes clearly contemplate that the moneys belonging to the sinking fund shall remain in the state treasury, and the treasurer be liable therefor, until they shall be actually applied by the commissioners as directed by law. Act of April 13, 1870 (P. L. 67); act of May 9, 1874 (P. L. 126); act of February 12, 1876 (P. L. 3); act of June 23, 1885 (P. L. 140).

This conclusion receives additional force from the entire absence of statutory provision for the safe keeping of said moneys by the commissioners of the sinking fund, or for any security to be given by them to the state for the same.

All these later acts expressly recognize the power and right of the treasurer to deposit the funds with banks, corporations, firms, and individuals, and also the right to take security therefor.

PER CURIAM:

This case is too plain for discussion. The defendants among them received the money of the state, and whether obtained honestly or by fraud, the state was entitled to have it returned.

The judgment is affirmed.